STANLEY O. HARRIS *vs.* JOHN M. HOUCK and others, Commissioners of Highways of the Town of Hartwick.

Where the commissioners of highways of two towns make a joint contract with an individual to build a bridge across a stream which is the boundary line between the towns, and after the completion of the bridge the commissioners of one of the towns accept the same, on the part of their town, and pay the contractor its full equitable proportion or half part of the contract price, and the commissioners of the other town, on their part, do acts, by part payment, which amount to a conditional acceptance of the bridge, the latter commissioners are equitably bound to pay all that remains unpaid by them; and an action will lie against them by the contractor, for the amount, without joining the other commissioners as parties defendants.

The act of 1857, providing that whenever any two or more towns shall be liable to make or maintain any bridge or bridges, it shall be lawful for the commissioners of said towns, or of commissioners of either one or more towns, respectively, to enter into joint contracts, and that such contracts may be enforced against such commissioners *jointly or severally*, respectively, (*Laws of* 1857, *ch.* 383, § 2,) authorizes a several action against the commissioners ers of any town so contracting, without joining as defendants the commissioners of the other town or towns contracting.

In accepting a bridge constructed under a contract made by the commissioners of several towns jointly, each board acts for itself, severally. The statute nowhere provides for a meeting of the commissioners of two or more towns as a joint board.

THE defendants were, at the commencement of this action, commissioners of highways of the town of Hartwick, Otsego county. In 1869, the plaintiff entered into a contract with the defendants and the commissioners of highways of the town of Otsego, to build a bridge across the Oaks creek, a stream which is the boundary line between the said towns of Otsego and Hartwick, and was to receive therefor $575. The plaintiff built the bridge, and notified the commissioners of each town that it was finished, or would be finished, by a day he fixed. On that day two of the commissioners of the town of Otsego, and one of the commissioners of Hartwick, met the plaintiff at the bridge, and expressed themselves satisfied with it. The commissioners for Otsego accepted the bridge, as far as they were concerned, and directed the plaintiff to call on either of them for their half of the contract price. The

commissioner for Hartwick expressed himself satisfied, but said he could not pay for it until he saw the other commissioners. Two or three days afterwards, the commissioners for Otsego paid their half of the contract price in full. The commissioners for Hartwick called another meeting, at the bridge. All the commissioners for Hartwick came, and two of the commissioners of Otsego. The commissioners of Hartwick found fault with two of the piers. The commissioners of Otsego said nothing, did not withdraw their acceptance or demand their money back, but it was finally agreed by the Hartwick commissioners, to pay a part of their half of the money, and then if the plaintiff relaid the upper ends of two piers, they would pay the balance. This was agreed to by the plaintiff, and they, the Hartwick commissioners, paid the plaintiff $160, and agreed to pay the balance as soon as the plaintiff laid up the piers. The plaintiff went on and laid up the piers, as requested by the said Hartwick commissioners, and brought this action against them for the balance of their share of the contract price of the bridge. After proving the facts as above stated, the defendants moved for a nonsuit, on the ground that the commissioners of highways of the town of Otsego should have been joined as defendants. Which nonsuit was granted, and the plaintiff excepted. And judgment of nonsuit being entered, the plaintiff appealed.

*Lynes & Bowen,* for the plaintiff.

*E. M. Harris,* for the defendants.

*By the Court,* POTTER, J. The plaintiff's complaint sets forth two contracts; one made before the building of the bridge, in writing, with the defendants, jointly with the commissioners of highways of the town of Otsego, and the other with the defendants severally, after the bridge was accepted and one half of the consideration paid by

Harris *v.* Houck.

the commissioners of highways of Otsego, and a portion of the consideration on the part of the defendants had been advanced. The whole consideration of the joint contract was $575. The commissioners of Otsego had paid their one equal half, $287.50, and the commissioners of Hartwick $160 towards their equal half, when the second contract was made. The defendants then refused to accept the bridge in its then present condition, but agreed with the plaintiff, that if he would relay the tops of two abutments, by battering them back differently, they would pay him the balance coming to him. The plaintiff relaid the said abutments as requested. The plaintiff alleged this, in his complaint, and the defendants did not deny it in their answer. The defendants refused to pay this balance, and this action was brought against them severally. When the plaintiff rested his case, the defendants' counsel moved the court to dismiss the complaint, upon two grounds: " 1st. That the plaintiff cannot recover against a part of the joint contractors. That this contract was made by the commissioners of Otsego and Hartwick jointly, as one party, and the plaintiff in this action as the other party, and that the action is brought against the commissioners of Hartwick alone, when they should have been joined with the commissioners of the town of Otsego. 2d. That the evidence does not show that the plaintiff has performed on his part, according to the terms of the contract, and specifications and conditions contained therein, and the evidence does not show that the bridge was built and accepted by anybody who had a legal right to accept it; and that it was not accepted by the joint board of the commissioners of the two towns, nor do they claim to show that it was accepted by a regular meeting of either board."

The learned judge disposed of this second ground by a correct ruling as to that objection, by stating the evidence of the defendants' promise to pay when certain repairs were made, and said a case was made out, so far as that

point was concerned; but, still, he dismissed the complaint, upon the first objection, that the action should have been brought against the whole of the commissioners, jointly.

In this ruling I think the learned judge erred. I think the plaintiffs had a right to recover, as against both objections. Without reference to the statute, conceding there had been a joint contract with the commissioners of two different towns, we are to look at the condition of things at the time the last arrangement was made between the plaintiff and defendants. Each of these towns, though they each had been legally, jointly liable, to pay the whole liability, yet equitably, each was liable to pay but one half of the amount. The town of Otsego was satisfied with the structure, had accepted the bridge on its part, and had paid to the plaintiff its full *equitable* portion or half part of the contract price. It had also performed every *legal* act it could perform by way of releasing itself from further legal liability. The statute nowhere provides for a meeting of the commissioners of two or more towns as a joint board. In accepting the bridge, each board acts for itself, severally. The defendants, on their part, had done acts, by part payment, which amounted to a conditional acceptance of the bridge. They were equitably bound to pay all that remained to be paid to the plaintiff. As to the payment of this equitable balance, they made a distinct, separate and several contract with the plaintiff, (with which the town of Otsego and its commissioners had nothing to do,) to pay the plaintiff such balance, if he would perform certain additional labor, in a certain manner. Their equitable liability was a good consideration for their promise. It is immaterial, and needless, to inquire whether this labor was, or was not, a part of, or included in, the written joint contract. It was a matter only between the plaintiff and defendants. As to this, they severed from the town of Otsego, and made

Harris *v.* Houck.

their own contract, and the plaintiff had a clear right to recover. It was admitted by the pleadings, it not being denied, that the defendants had in their hands sufficient money, raised by their town, to pay this expense. The defendants had the power to make this new contract. It required no statute, of any kind, to authorize such an action upon such a contract.

But I think the learned judge erred in holding that a suit must necessarily be brought against the whole of the commissioners of all the towns, jointly. Before these statutes, (1841, amended in 1857, chapters 383 and 639,) no joint action could be sustained, uniting commissioners of different towns. The act of 1841 (§ 2) only authorized the proceeding against them upon their joint contracts to be *jointly* brought. The act of 1857, (ch. 383, § 2,) as an amendment to this provides, that " For the purpose of building and maintaining such bridges, it shall be lawful for the commissioners of said towns, or of commissioners of either one or more towns, respectively, (the other or others refusing to act,) to enter into *joint contracts ;* and such contracts may be enforced in law or equity against such commissioners, (or their representative successors,) jointly or severally, respectively."

There is to be a presumption that this change of phraseology was intended for some purpose. This is the natural, the reasonable presumption. The act of 1841 gave a new statute remedy, unknown to the common law, a right to proceed against different and several quasi corporations jointly. It can well be perceived, that while this provision was beneficial to the public interests, yet as between the different towns, serious embarrassments and difficulties might arise. As each town would thus become liable for the whole expense, and perhaps driven to further litigation to compel equitable contribution from the others, it presented an obvious reason for the amendment of 1857. It may have been discovered in practice, as in the case

before us, that one town jointly liable might desire to pay
its equitable proportion, while another town so jointly
liable, for some good reason, or from some capricious or
obstinate reason, would refuse to allow the other town to re-
lieve itself from liability, and insist upon keeping them still
jointly liable; nay, even liable to a proportion of the costs
of a litigation.   Such costs might thus be imposed upon
a willing town, because of the caprice the of litigious un-
willing one.   How appropriate, then, a provision that these
towns, through their highway commissioners, may be pro-
ceeded against *jointly or severally, respectively.*   This is a
remedial statute, and every possible effect must be given
to it, in order to carry out the intent of its makers; be-
sides, it must have both a reasonable and an equitable
construction.   What, then, is the meaning and intent of
these words in the amendment of 1857: "And such con-
tracts may be enforced against such commissioners,
jointly *or severally, respectively?*"   The statute contem-
plates that several towns, two or more, may thus make a
joint contract.   There is no difficulty in understanding
the meaning of these words themselves.   The question
argued is as to the persons, or bodies of persons, to whom
the words are intended to be applied; that is, do the
words *severally respectively,* apply to the several bodies of
commissioners, or to the several individual commission-
ers?   They certainly mean something different from
jointly; they do authorize a several suit to be brought
against somebody.   We can hardly glance at the object
of this statute, and retain a doubt as to its meaning.   The
whole spirit of the law is to secure a *town* liability, and
not an *individual* liability; and there is no statute that
creates a town liability, if only one of its several commis-
sioners should be sued severally.   In this view it would
be an absurd construction, that a town could be held
liable, in a suit against one of its several commissioners.
Before these acts, towns were only severally liable for the

acts of their own commissioners, and not liable for the several act or omission of one. The act of 1841 made such towns *equally* liable, and authorized a joint action. Until 1857, no *several* action was authorized. The action must be brought against the two or more bodies severally. By the latter act, while the contract was joint, a *several* action was authorized *against such commissioners;* that is several against *such commissioners* or boards, as before, must be sued jointly; to wit, several as to the bodies. The word *individual* is nowhere used; and, as I think, is not implied or intended.

This case presents the strongest possible illustration of the necessity and wisdom of the amendment of the statute by the act of 1857. The result is, the nonsuit must be set aside, and a new trial ordered, costs to abide the event.

[THIRD DEPARTMENT, GENERAL TERM, at Albany, October 4, 1870. *Miller*, P. J., and *Potter* and *Parker*, Justices.]